Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5974 | **DATE** | 2/26/2002 |
| **CASE TITLE** | VILLAGE OF LINCOLNSHIRE vs. BROWN et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendants' motion for summary judgment is granted. This action is dismissed in its entirety without prejudice. All pending motions are moot. All previously set dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 7 2002 | |
| | Notified counsel by telephone. | | date docketed | 41 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 2/26/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JS | courtroom deputy's initials | 02 FEB 27 PM 1:49 Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

FEB 27 2002

| | |
|---|---|
| VILLAGE OF LINCOLNSHIRE, | |
| Plaintiff, | |
| v. | No. 01 C 5974 |
| ILLINOIS DEPARTMENT OF TRANSPORTATION, Kirk Brown, SECRETARY; UNITED STATES DEPARTMENT OF TRANSPORTATION, Norman Y. Mineta, SECRETARY; ILLINOIS DIVISION OF THE FEDERAL HIGHWAY ADMINISTRATION, Norman R. Stoner, DIVISION ADMINISTRATOR; FEDERAL HIGHWAY ADMINISTRATION, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 3, 2001, plaintiff Village of Lincolnshire ("Lincolnshire") filed a four-count complaint against defendants seeking declaratory and injunctive relief. Lincolnshire seeks relief pursuant to the National Environment Policy Act of 1969 as amended, 42 U.S.C. § 4321 *et. seq.* ("NEPA"), the regulations adopted under NEPA, 49 U.S.C. § 303 and 23 U.S.C. § 138, the National Historic Preservation Act, as amended 16 U.S.C. §470f ("NHPA"), and the Administrative Procedure Act 5 U.S.C. § 701 *et. seq* ("APA"). On October 9, 2001, defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. On October 30, 2001, this court converted defendants' motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure

1

56. This court ordered expedited discovery on the threshold issue of whether any of major federal action existed in connection with the State of Illinois' proposed improvements to the eastern segment of Illinois Route 22. Upon further review of the record, for all the reasons stated herein, this court finds insufficient evidence in the record to create an issue of material fact regarding the existence of major federal action in connection with the proposed improvements to the eastern section of Illinois Route 22. Accordingly, defendants' motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

Illinois Route 22 ("Route 22") is a two-lane National Highway System ("NHS") highway, which runs east and west across Lake County, Illinois. U.S. Route 14 ("Route 14") is Route 22's western point of origin. Route 22 extends east from Route 14, a distance of approximately 20 miles, terminating at U.S. Route 41 ("Route 41")[2]. Approximately 4 miles of Route 22 passes through the Village of Lincolnshire. In the early 1990's, the Illinois Department of Transportation ("IDOT") proposed to widen the entire length of Route 22 from Route 14 to Route 41. For construction and planning purposes, IDOT divided the proposed improvements to Route 22 into three segments: (1) Route 14 to Quentin Road, a distance of approximately 8 miles ("western segment"); (2) Quentin Road to Illinois Route 83 ("Route 83"), a distance of approximately 3.5 miles ("middle segment"); and (3) Route 83 to Route 41, a distance of about 8.5 miles ("eastern segment"). The primary

---

[1] The following facts are undisputed and are taken from the plaintiff's and defendants' respective Local Rule 56.1(a) & (b) statements of material facts and accompanying exhibits.

[2] A copy of a scale map of Illinois Route 22 and the surrounding area is attached to this opinion. The map is marked Defense Exhibit 4 and defendants submitted the original map in Defendants' Supplemental Appendix Of Materials In Reply to Plaintiff's Statement and in Further Support of Defendants' Motion For Summary Judgment.

highways which intersect Route 22: Route 14; Route 83; and Route 41 run generally in a north-south direction. The 4 miles of Route 22 which passes through Lincolnshire is contained entirely within the eastern segment.

IDOT historically has participated in monthly coordination meetings with the Federal Highway Administration ("FHWA") in order to maintain the possibility of receiving federal funds in connection with any highway project the State of Illinois considers. In these coordination meetings, FHWA typically receives information from IDOT regarding specific highway improvement projects and FHWA provides IDOT guidance and approvals regarding various aspects of these projects. FHWA and IDOT work together to develop state highway projects for federal funding and to maintain communication with one another ensuring that if and when a state project becomes a federal project, the state project has maintained the standards necessary under federal law.

Over the course of about six years, IDOT and FHWA have discussed and agreed upon certain project aspects of Route 22 including roadway geometry, intersection improvements, design exceptions, environmental issues, historic properties, and public parks. The coordination between IDOT and the FHWA as to Route 22 has allowed IDOT to proceed with its proposed improvements along Route 22 with the knowledge that if, and when it sought to request the assistance of federal funding assistance, the requisite federal requirements would have been satisfied. IDOT initially made arrangements for the entire Route 22 project to receive federal funds or reimbursement under the federal-aid highway program. IDOT, however, to date, has neither received nor requested any federal funds or reimbursements for any of its activities concerning any segment of Route 22. More specific to this litigation, IDOT has neither requested nor received federal funding or reimbursement for the proposed improvements along the eastern segment of Route 22. Furthermore, with the

exception of some bridge improvements along the eastern segment, IDOT is no longer considering federal funds or federal reimbursement as to the eastern segment of Route 22. IDOT continues, however, to preserve the option to request federal funds or federal reimbursement with regard to the western and middle segments of Route 22 in the future.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the undisputed evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th

Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995) (hearsay testimony may not be considered in summary judgment proceeding).

## ANALYSIS

In its complaint, Lincolnshire seeks to halt the proposed improvements to the eastern segment of Route 22 pending the preparation of environmental studies in compliance with the requirements of NEPA, the regulations enacted under NEPA, and Section 106 of the NHPA.

NEPA provides in pertinent part:

> The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall--
>
> ....
>
> (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on--
> (i) the environmental impact of the proposed action,
> (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
> (iii) alternatives to the proposed action,
> (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
> (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332.

Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f, provides that the head of any federal agency "having direct or indirect jurisdiction over a proposed federal or federally-assisted undertaking," shall, prior to approving the use of any federal funds, "take into account the effect of the undertaking on any site that is included in the National Register" and "shall

afford the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to such undertaking."

These federal statutes and regulations only apply when the federal government's involvement in a project is sufficient to constitute a "major federal action." "The purpose of NEPA is to require that federal decision-makers consider the environmental consequences of their actions before deciding to proceed," Swain v. Brinegar, 542 F.2d 364, 369 (7th Cir.1976). Accordingly, as stated earlier, the threshold issue in this case is whether there is sufficient federal involvement in the proposed improvements to the eastern segment of Illinois Route 22 to constitute a "major federal action." See Save Barton Creek Ass'n v. Federal Highway Admin., 950 F.2d 1129, 1134 (5th Cir. 1992).

Lincolnshire argues that the preparation of an environmental impact statement in compliance with federal law is necessary because the proposed improvements along the entire 20-mile corridor of Route 22 constitute a "major federal action." Lincolnshire asserts that there is a genuine issue of material fact regarding: (1) whether the proposed improvements along the entire 20-mile corridor of Route 22 constitute a major federal action; (2) whether defendants have inappropriately segmented the eastern segment of the Route 22 project from the 20-mile corridor of Route 22 so as to circumvent NEPA requirements; and (3) whether the federal involvement found within the proposed improvements on the eastern segment of Route 22 constitutes a major federal action. The court will address each argument in turn after first addressing the scope of Lincolnshire's standing in this case.

I.   *The Scope of Lincolnshire's Standing*

Under the facts of this case, Lincolnshire lacks proper standing to seek the cessation of any highway improvement constituting a major federal action occurring on Route 22 outside of Lincolnshire's village borders. To obtain judicial review of a federal agency action under NEPA,

6

and thereby make use of judicial tools of litigation such as discovery[3], litigants must meet both the constitutional requirements for standing and the requirements imposed by Congress through the APA. Florida Audubon Soc. v. Bentsen, 94 F.3d 658, 666 (D.C.Cir. 1996); Foundation on Economic Trends v. Lyng, 943 F.2d 79, 82- 83 (D.C.Cir.1991).

Under the constitutional standing doctrine, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758-59, 70 L.Ed.2d 700 (1982)). Under section 10(a) of the APA, when, as here, the challenge is against a federal agency under NEPA, the plaintiff claiming a right to judicial review must be "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The United States Supreme Court has interpreted section 10(a) of the APA to require that the person claiming a right to sue (1) identify some 'agency action' that affects him in the specified fashion; and (2) establish that the injury he complains of falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 110 S.Ct. 3177, 3185, 3186, 111 L.Ed.2d 695 (1990).

The obvious interest Lincolnshire seeks to protect is the environment of Lincolnshire affected by the proposed improvements to Route 22, and Lincolnshire's environmental interest coincides with the Congressional intent of NEPA. Lincolnshire, however, has neither argued nor presented evidence identifying any injury or potential injury outside of its borders. Nor has Lincolnshire substantiated how any unlawful conduct by defendants' occurring outside of Lincolnshire's borders

---

[3] In response to this motion for summary judgment, Lincolnshire argued that defendants improperly denied discovery to it as to the proposed improvements of Route 22 west of Route 83 which encompasses the middle and western segments of the Route 22 project.

could be traceable to any interests it may have consistent with Congress' intent in enacting the NEPA. Accordingly, Lincolnshire has not demonstrated its standing to bring any environmental claim as to any proposed improvements of Route 22 beyond its village borders.

II. *Federal Involvement Regarding The Entire Route 22 Project*

In addition to lacking standing beyond its own borders, Lincolnshire also has failed to establish an issue of material fact regarding the existence of major federal action over the entire 20-mile corridor of Route 22. First, Lincolnshire attempts to submit evidence of an unidentified IDOT attorney who "candidly admitted to a resident of Lincolnshire that (after six years of processing the improvements for federal approval) it would proceed with state-only funding for that portion of Route 22 east of Route 83 in order to avoid meeting the stringent environmental review requirements imposed by NEPA." (Pl. Response to Def. Motion at 8). This inadmissible hearsay evidence does not create an issue of material fact and this court cannot consider this evidence in evaluating the merits of defendants' motion for summary judgment. The law in the Seventh Circuit is clear that in response to a motion for summary judgment, the non-moving party may not rely upon inadmissible hearsay in an affidavit or deposition to defeat a motion for summary judgment. Bombard, 92 F.3d at 562.

Second, Lincolnshire argues that since defendants proceeded in a manner that would have allowed the proposed work for all of Route 22 to receive federal funding, the aggregate of all the coordination between IDOT and FHWA should constitute a major federal action. The fact that a project has been designed to preserve the option of federal funding in the future is not enough, standing alone, to make it a federal project. Historic Preservation Guild of Bay View v. Burnley, 896 F.2d 985, 990-91 (6th Cir. 1989). In this case, it is undisputed that IDOT has not, as of yet, requested nor received any federal funds or reimbursements for any of the proposed improvements on Route 22. The only additional evidence Lincolnshire presents is the undisputed evidence of continued coordinated operations between state and federal agencies, which preserve the option for

federal funding for Route 22 in the future. This evidence standing alone is insufficient to create an issue of material fact. Id.

As stated earlier, Lincolnshire also argues that the entire 20-mile corridor of Route 22 possesses the requisite degree of federal involvement to trigger the application of NEPA because the eastern segment of Route 22 is an improper segmentation of an entire Route 22 project. "[I]mproper segmentation" has been defined as an attempt by an agency to divide a major federal action into smaller components in order to allow those smaller components to escape the application of NEPA. See, e.g., Scottsdale Mall v. State of Ind., 549 F.2d 484 (7th Cir. 1977); Swain v. Brinegar, 542 F.2d 364 (7th Cir.1975) (en banc). The case law dealing with improper segmentation typically involves a situation where major federal action is found to exist and then the segment in question is analyzed in order to determine whether a particular segment has been separated from the whole to prevent the application of NEPA to that segment. See, e.g., Mach v. Skinner, 916 F.2d 13, 16 n. 4 (D.C.Cir.1990) ("Because we hold that the Light Rail Project does not involve 'major federal action,' we do not decide whether the district court correctly held that Maryland's segmentation of the Project was proper."). The possibility does exist, however, that a state agency could improperly segment critical portions of a proposed project before the project was developed to the stage of becoming a major federal action. Save Barton, 950 F.2d at 1139. In general, segmentation analysis should function to weed out state highway projects which are segmented as a pretext to remove the segmented portion from the purview of NEPA. When the segmentation of a project has no independent justification, or is simply illogical when viewed in isolation, the segmentation should be held invalid. Id. (citations omitted).

Since, however, all projects must start and end somewhere, an otherwise state project does not fall within the scope of NEPA simply because that state project ends at a junction next to a federally-funded project. Village of Los Ranchos de Albuquerque v. Barnhart, 906 F.2d 1477, 1482 -1484 (10th Cir. 1990). A local project closely related physically to a federal project may be deemed

9

independent for NEPA purposes only after consideration of whether the proposed segment: (1) has logical termini, (2) has substantial independent utility, (3) does not foreclose the opportunity to consider alternatives, and (4) does not irretrievably commit federal funds for closely related projects. Id.; 23 C.F.R. § 771.111(f) (1991).

In view of the federal regulations regarding proper segmentation, Lincolnshire has failed to present sufficient evidence in the record to demonstrate a genuine issue of material fact that the eastern segment of the Route 22 constitutes an improper segmentation. It is undisputed that IDOT conducted no analysis to determine where to segment the Route 22 project outside of Route 22's actual endpoints of Route 14 to the west and Route 41 to the east. In addition, it is undisputed that in April 1993, a consultant prepared for IDOT a report describing possible improvements to Route 22 by dividing Route 22 into five segments for study purposes. Lincolnshire asserts that since no analysis was done in determining the construction segmentation of Route 22 and since earlier divisions of Route 22 which were done for study purposes are inconsistent with the current segmentation, the three current segments proposed by IDOT must be improper. In essence Lincolnshire argues that Route 14 and Route 41 are more logical termini for the Route 22 project than Route 83. That a terminus is the most logical is not mandated by the segmentation analysis, segmentation analysis requires only that a terminus be "logical." See Village of Los Ranchos, 906 F.2d at 1483. This court finds that Lincolnshire has failed to present evidence in the record which creates a genuine issue of material fact that Route 83 is not a logical terminus in which to divide Route 22.

III.  *Federal Involvement within the eastern segment of the Route 22 Project*

Lincolnshire argues that because over a six-year period there has been sufficient federal involvement within the eastern segment of Route 22, a question of material fact exists as to whether the eastern segment of Route 22 has been so imbued with a federal character that compliance with federal environmental statutes is necessary.

Typically, a project is considered a major federal action when it is funded with federal money. Southwest Williamson County Community Ass'n, Inc. v. Slater, 243 F.3d 270, 278 (6th Cir. 2001). The absence of federal funding, however, is not necessarily dispositive in determining whether a highway project is considered a major federal action. Historic Preservation Guild, 896 F.2d at 990. Outside of federal funding, there are no clear standards for defining the point at which federal participation transforms a state project into a federal project and no litmus test exists to determine what constitutes a "major federal action." Save Barton Creek, 950 F.2d at 1134 (citation omitted); U.S. v. Southern Florida Water Management Dist., 28 F.3d 1563, 1572 (11th Cir. 1994)(citations omitted).

The United States Court of Appeals for the Seventh Circuit has held that an Indiana by-pass project was a "major federal action" requiring an environmental impact statement where the facts of the case indicated federal participation in the programming, location, design, preliminary engineering, and right of way acquisition stages of the project. Scottsdale Mall, 549 F.2d at 489. In addition, the Tenth Circuit has stated that the touchstone of major federal activity is a federal agency's authority to influence nonfederal activity, "[T]he federal agency must possess actual power to control the nonfederal activity." Village of Los Ranchos, 906 F.2d at 1482.

In looking at the facts of this case and in light of the paucity of case law from the Seventh Circuit on point with the issues presented, this court believes that applying the test and reasoning enunciated by the Sixth Circuit in the Slater case is appropriate to determine when a state project has become so imbued with a federal character that compliance with federal environmental statutes is necessary. Accordingly under that test, there are two alternative bases for a court to find that a non-federal project constitutes a "major federal action" such that NEPA requirements apply: (1) when the non-federal project restricts or limits the statutorily prescribed federal decision-makers' choice of reasonable alternatives; or (2) when the federal decision-makers have authority to exercise sufficient control or responsibility over the non-federal project so as to influence the outcome of the

11

project. Slater, 243 F.3d at 281. If either test is satisfied, the otherwise non-federal project must be considered a major federal action. Id.

In this case, under either test, Lincolnshire has failed to present sufficient evidence to create an issue of material fact that the eastern segment of Route 22 is a major federal action. Specifically, there has been no showing that non-federal agencies proceeding with the proposed improvements along the eastern segment of Route 22 will restrict possible federal decisions in the future. Additionally, there has been no showing that federal decision-makers have been given any authority, control, or responsibility over the proposed improvements on the eastern segment of Route 22.

In this case, it is undisputed that there has been no federal money expended in the development or planning of the improvements of the eastern segment of Route 22. In addition, the evidence in this case reveals that FHWA was involved with and approved of various design aspects of the eastern segment. It is also undisputed that FHWA in working with IDOT on the eastern segment of Route 22 also approved various environmental reviews prepared by IDOT. Finally, the evidence in the case establishes that the possibility that federal funds will be used to improve bridges within the eastern segment of Route 22 remains. In light of all this undisputed evidence and resolving all reasonable ambiguities in favor of Lincolnshire, Lincolnshire has not presented sufficient evidence in the record to create an issue of material fact regarding whether the FHWA has any control over the eastern segment of Route 22 or whether any actions on the part of the IDOT on the eastern segment of Route 22 will restrict possible federal actions in the future. The undisputed evidence in this case establishes that defendants have continued to coordinate and communicate with one another to keep the option of receiving federal funding open. None of the coordination or communication between federal and non-federal agencies and none of the work done to keep the option of federal funding open, however, rises to the level of major federal action so as to require compliance with the NEPA requirements in this case.

## CONCLUSION

Accordingly, for all the above stated reasons, defendants' motion for summary judgment is GRANTED. This case is dismissed in its entirety without prejudice. All pending motions are moot. All previous dates and schedules are moot.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATE: February 26, 2002



DEFENSE EXHIBIT 4

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| VILLAGE OF LINCOLNSHIRE | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 01 C 5974 |
| BROWN et al | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is granted in favor of defendants Brown et al and against plaintiff Village of Lincolnshire. This action is dismissed in its entirety without prejudice.

Michael W. Dobbins, Clerk of Court

Date: 2/26/2002

J. Smith, Deputy Clerk